# SHEVLIN-MATHIEU LUMBER COMPANY v. PATRICK H. FOGARTY.[1]

July 23, 1915.

Nos. 19,272—(180).

**Public land — registration of title.**

1. The state courts have no jurisdiction over the proprietary title of the United States to land within the state, and a decree of registration under the Torrens Act, rendered before the United States has parted with such proprietary title, is a nullity as against the United States and its subsequent vendees.

**Same — omission of examiner of titles.**

2. To entitle land to registration under the Torrens Act, it must be established that the United States has parted with its original title thereto; and, where the United States has not parted with such title, the omission of the examiner to ascertain and report such fact is an "omission" which entitles a good-faith purchaser, who subsequently, and without negligence on his own part, purchases the land on the faith of a certificate of title issued in such proceedings and whose title failed because the land belonged to the United States, to reimbursement out of the assurance fund.

**Registration of title — purchase on faith of certificate.**

3. Purchasing registered land on the faith of the certificate of title and without making an independent investigation of the title is not negligence on the part of the purchaser.

**Same — duty of examiner of titles.**

4. The statute imposes upon the examiner the duty to make his investigation full and thorough, and he is not justified in relying upon a receipt or certificate issued to an entryman by a local land office as establishing that the United States has parted with its proprietary title.

**Same — reimbursement of purchaser.**

5. A certificate of title is an assurance to subsequent purchasers that the court had jurisdiction of the subject matter of the title, and if the examiner neglected to report that no patent had issued and the title of a good-faith purchaser fails because the land belonged to the United States, the failure of the examiner to report the absence of a patent entitles such purchaser to reimbursement out of the assurance fund, although the certificate does not purport to bar the rights of the United States.

[1] Reported in 153 N. W. 871.

Action in the district court for Koochiching county to recover $2,584. From an order, Stanton, J., sustaining defendant's demurrer to the complaint, plaintiff appealed. Reversed.

*Powell & Simpson* and *H. W. Volk,* for appellant.

*Franz Jevne,* County Attorney, *Jevne & Norton* and *Frank Palmer,* for respondent.

TAYLOR, C.

Plaintiff brought suit against the county treasurer of Koochiching county to recover the value of a tract of land purchased from the person in whose name title thereto had been registered under the so-called Torrens Act, but who in fact had no title, for the reason that the United States had not conveyed or relinquished its original proprietary title to the land. Defendant demurred to the complaint; the demurrer was sustained and plaintiff appealed.

It appears from the complaint, among other things, that in March, 1902, William E. White made homestead entry of the land, and in May, 1903, made commutation proof therefor and received the usual receipt from the United States land office, which was recorded in the office of the register of deeds; that thereafter White's entry was duly cancelled by the land department of the United States; that the land was taxed for the year 1904 and was subsequently sold for such taxes to R. C. Fraser; that thereafter Fraser, in form, perfected such tax title and procured the title to the land to be registered in his name under and pursuant to the Torrens Act, and in April, 1910, received the usual certificate of title therefor from the registrar of titles; that thereafter plaintiff, relying upon such registration and the certificate of title issued pursuant thereto, purchased the land from Fraser in good faith for a valuable consideration and without notice or knowledge of any defect in the title, and surrendered the certificate of title issued to Fraser and received in lieu thereof a certificate of title issued to itself; that in April, 1912, the United States conveyed the land by patent in fee simple to Paul W. Perkins, pursuant to an application therefor under the timber and stone law filed by Perkins in August, 1910; that the tax title and all proceedings based thereon including the registration of title in

Fraser were void, for the reason that the land belonged to the United States and was not subject to taxation nor to the laws of Minnesota, until conveyed by the United States to Perkins; and that the examiner of titles in the registration proceeding had negligently failed to ascertain or report to the court that the entry of White had been canceled and that no patent to the land had been issued by the United States.

The land in question was the property of the United States during all the proceedings here in controversy, and it is not claimed by either party that plaintiff or its grantor ever obtained any title thereto or interest therein. The question presented is whether plaintiff, who in good faith purchased the land from the registered owner thereof and received a certificate in the statutory form purporting to give perfect title thereto, is entitled to be reimbursed out of the assurance fund for the loss sustained by reason of the fact that the title to the land was in the United States at all times during the registration proceedings and never vested in plaintiff.

The statute provides:

"Any person who, without negligence on his part, sustains any loss or damage by reason of any omission, mistake, or misfeasance of the registrar or his deputy, or of any examiner or of any clerk of court, or of his deputy, in the performance of their respective duties under this law    *    *    *    may institute an action in the district court to recover compensation out of the assurance fund for such loss or damage." G. S. 1913, § 6943.

The statute further provides that, in such actions, "the county treasurer, in his official capacity, shall be the sole defendant." G. S. 1913, § 6944.

The statute also provides that the examiner, among other things, "shall search all public records, and fully investigate all facts pertaining to the title which may be brought to his notice and shall file in the case a full report thereof, together with his opinion upon the title. G. S. 1913, § 6880.

In the light of these statutes extended discussion is unnecessary. It was the duty of the examiner to search all public records, to investigate fully all facts pertaining to the title brought to his notice,

and to file a full report thereof together with his opinion upon the title. The purpose of such examination and report is to furnish the court with all available information relating to the title, to the end that the action of the court shall be based upon correct premises. The position of examiner under this law is one of high responsibility. Unless the examiner performs his duties fully and thoroughly, the court is liable to be misled to the substantial prejudice of some property owner.

No lesser estate than a fee simple can be registered. Section 6871, G. S. 1913. The United States is the source of all land titles in the state of Minnesota, and no title in fee exists in any private person until the United States has parted with its proprietary title. Usually the United States does not part with such title until it issues a patent for the land. Sometimes such title is conveyed by direct congressional grant, but no such grant is involved in the present case. White attempted to acquire the land under the homestead laws, but his inchoate title thereto was lost through failure to comply with such laws, and the land remained the property of the United States until conveyed to Perkins subsequent to the registration proceedings.

The compact between the people of Minnesota and the United States, embodied in the state Constitution as a condition to the admission of Minnesota as a state, provides:

"That this state shall never interfere with the primary disposal of the soil within the same by the United States, or with any regulations Congress may find necessary for securing the title to said soil to *bona fide* purchasers thereof; and no tax shall be imposed on lands belonging to the United States." Const. art. 2, § 3.

Under this compact it is beyond the power of the state to impair or affect in any manner the original title of the United States to land within the state, or to tax land belonging to the United States. As the state courts have no jurisdiction over the proprietary title of the United States, an attempt to register land while the United States still retains its original title thereto is a mere nullity. The court has no jurisdiction of the subject matter. Before any right exists to institute or maintain proceedings under the registration act, it must be established as a fact that the United States has parted

with its original title to the land; and it is the duty of the examiner to ascertain and report the evidence relied upon to establish such fact. The usual evidence thereof is the patent. If it does not appear that a patent has issued, the examiner should report such fact; and in that event he should also report the title as not proper for registration, unless he is able to report that a congressional grant or the public records of the United States establish beyond question that the title has in fact passed from the United States, and that the title of its grantee can no longer be defeated by the act of the land department of the United States. The receipt or certificate issued by the register or receiver upon the entry of land at a local land office does not establish such fact, for such receipts and certificates and all rights of the holders thereof are subject to cancelation by the land department under authority conferred upon that department by Congress.

That the United States has parted with its proprietary title is a condition precedent to the right of a claimant to institute or maintain proceedings for registration of the land; and, where no patent has issued, an examiner who fails to ascertain and report that fact cannot be held to have performed his duty, unless he ascertains and reports that the title has in fact passed, without the issuance of a patent, by virtue of some act of Congress. In the present case, the failure of the examiner to ascertain and report that no patent had issued for the land and that the United States had not parted with its proprietary title thereto, was at least an "omission" which entitled plaintiff, if without negligence on its own part, to seek reimbursement for its loss out of the assurance fund.

Defendant asserts that plaintiff is not shown to be without negligence on its own part; but, as the cause is submitted upon a demurrer to the complaint, it is sufficient to say that the complaint does not disclose affirmatively that plaintiff was guilty of negligence. Purchasing the land in reliance upon the certificate of title and without making an independent investigation of the title, is not sufficient to establish negligence, for plaintiff had the right to rely upon the certificate as evidence that the holder thereof possessed a title entitled to registration.

The receipt issued to White by the receiver of the local land office was of record, and defendant calls attention to section 8450, G. S. 1913, which makes such receipts *prima facie* evidence of title. This case is an illustration of the unreliability of such evidence. The rule is one of convenience, but has no controlling force in the present case. The statute required the examiner to investigate fully all matters pertaining to the title, and the *prima facie* character of this receipt did not relieve him from the statutory duty to make his investigation full and thorough.

The statute (G. S. 1913, § 6892) provides:

"Every person receiving a certificate of title pursuant to a decree of registration, and every subsequent purchaser of registered land who receives a certificate of title in good faith and for a valuable consideration, shall hold the same free from all incumbrances, and adverse claims, excepting only such estates, mortgages, liens, charges and interests as may be noted in the last certificate of title in the office of the registrar, and also excepting any of the following rights or incumbrances subsisting against the same, if any, namely:

1. Liens, claims or rights arising or existing under the laws or the Constitution of the United States, which this state cannot require to appear of record.

2. The lien of any tax or special assessment for which the land has not been sold at the date of the certificate of title.

3. Any lease for a period not exceeding three years when there is actual occupation of the premises thereunder.

4. All rights in public highways upon the land.

5. Such right of appeal, or right to appear and contest the application as is allowed by this chapter."

Defendant contends that plaintiff is not entitled to recover, for the reason that the above statute shows that the certificate does not undertake to insure the title against rights arising or existing under the laws or Constitution of the United States. It is not within the power of the state to bar the rights of the United States and the registration proceedings do not purport to bar such rights. But the purpose of the registration act is to insure to the one to whom a certificate of title is issued, and to his vendees, an absolutely perfect and

indefeasible title, free from all claims of every kind and nature except those expressly noted upon the certificate, and to put such title beyond attack. A subsequent purchaser has the right to rely upon such certificate as an assurance that the court which decreed its issuance had jurisdiction of the subject matter of the title, and that the holder thereof possesses a title which the law authorized to be registered. If this be not true, if the court in fact had no jurisdiction to render the decree, for the reason that the land still belonged to the United States, and if the fact that the United States had not parted with its title was not ascertained and reported by the examiner, the purchaser sustains a loss by reason of the neglect of the examiner which entitles him to reimbursement out of the assurance fund under section 6943, G. S. 1913.

Order reversed.